2024 UT App 12

# THE UTAH COURT OF APPEALS

COHEN BRAFFITS ESTATES DEVELOPMENT, LLC
AND BRAFFITS CREEK ESTATES, LLC,
Appellants,
*v.*
SHAE FINANCIAL GROUP, LLC,
Appellee.

Opinion
No. 20210448-CA
Filed January 25, 2024

Fifth District Court, Cedar City Department
The Honorable Ann Marie McIff Allen
No. 180500059

Sarah E. Spencer, Kristen C. Kiburtz, Jeffrey D.
Enquist, and Judson Dee Burton,
Attorneys for Appellants

Troy L. Booher, Dick J. Baldwin, Taylor P. Webb,
Michael N. Zundel, and G. Troy Parkinson,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES GREGORY K. ORME and AMY J. OLIVER concurred.

TENNEY, Judge:

¶1     Abraham Kleinman and Zohar Cohen were partners in a
New York limited liability company, Cohen Braffits Estates
Development, LLC (CBED). In 2015, Cohen obtained two loans
from Shae Financial Group, LLC (Shae), purportedly on behalf of
CBED, and those loans were secured by a deed of trust on
property that CBED owned in Utah. When Kleinman discovered
what Cohen had done, Kleinman sued Cohen in New York on
behalf of CBED. In 2017, a New York court awarded CBED a
monetary judgment against Cohen for the value of the Shae loans.

But when Shae subsequently moved to foreclose on the property that had been secured to its loans, CBED sued Shae in Utah, this time seeking to invalidate the loans. The Utah district court held that this suit was barred by the election of remedies doctrine. CBED subsequently petitioned the New York court to amend its judgment and remove the monetary judgment that had been awarded earlier against Cohen, after which it filed a motion under rule 60(b) of the Utah Rules of Civil Procedure asking the court to vacate the prior election of remedies ruling. The court denied that motion.

¶2 CBED now challenges the district court's initial ruling that the election of remedies doctrine barred its suit, as well as the court's denial of CBED's rule 60(b) motion. For the reasons set forth below, we affirm both rulings.[1]

BACKGROUND[2]

*CBED's Formation & the Shae Loans*

¶3 Abraham Kleinman and Zohar Cohen created CBED in New York to acquire several thousand acres of partially

---

1. A second party—Braffits Creek Estates, LLC—is listed as an additional appellant. Braffits Creek Estates is owned 100% by CBED, and CBED is Braffits Creek's only member. For simplicity, we refer to these two entities collectively as CBED throughout this opinion.

2. As indicated in our introduction, this is a consolidated appeal in which we're reviewing both a decision granting summary judgment and a subsequent decision denying a rule 60(b) motion. When reviewing a decision granting summary judgment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Nassi v. Hatsis*,

(continued…)

developed land near Cedar City that are collectively known as Braffits Mountain. In 2013, CBED purchased a promissory note and mortgage (referred to throughout this litigation as "the Kennedy Note") from a pending bankruptcy proceeding that conveyed ownership in Braffits Mountain. The Kennedy Note itself was secured by a deed of trust recorded in 2007 (the Kennedy Trust Deed).

¶4      Kleinman and Cohen are both New York residents. CBED is a limited liability company formed in New York. A 2013 operating agreement identifies Kleinman and Cohen as being 50% members of CBED. Under the operating agreement, no member of CBED has "any power or authority to bind [CBED] in any way, to pledge its credit or to render it liable pecuniarily for any purpose."[3]

¶5      In the first few months of 2015, Cohen obtained two loans from Shae, purportedly on CBED's behalf. The first loan was for $650,000, and the second loan was for $400,000. Each loan was secured by pledging the Kennedy Note—and, by extension, CBED's ownership in Braffits Mountain. Cohen represented to Shae that he was authorized to bind CBED to repay these loans and to provide Braffits Mountain as security for the loans. At the

---

2023 UT App 9, n.3, 525 P.3d 117. Unless otherwise noted, our recitation of the facts and procedural history here is drawn from facts that were deemed undisputed by the district court or facts (mostly procedural) for which there's no dispute in the record.

3. In its complaint in the New York case, CBED alleged that in July 2014, Cohen and Kleinman entered into an agreement in which Cohen transferred some portion of his interest in CBED to Kleinman, thus resulting in Kleinman becoming CBED's majority member. Whether this is or isn't true is immaterial to the analysis of the issues before us in this appeal.

time, Braffits Mountain was CBED's sole asset. Kleinman was unaware of the Shae loans when Cohen obtained them.

*The New York Action*

¶6     Around this same time, Kleinman discovered numerous instances of allegedly fraudulent activity from Cohen relating to both Cohen's relationship with CBED and to certain other financial transactions. In August 2015, Kleinman and CBED sued Cohen in New York, asserting a number of causes of action relating to fraud and corporate misconduct. Kleinman also requested a declaratory judgment that he owned or controlled "100% of CBED and is its sole managing member" and an award of "monetary damages in amounts to be proved at or before trial."[4]

¶7     During the pendency of the New York suit, Kleinman learned for the first time about the Shae loans. Kleinman contacted Shae in April 2016 about these loans, but CBED did not attempt to add Shae as a party to the case that was already pending against Cohen. But while CBED did not add Shae to the suit, it did file an amended complaint in the case in August 2016 that added new allegations against Cohen relating to the Shae loans. In that portion of the amended complaint, CBED alleged that Cohen had obtained these loans "by wrongfully, intentionally and fraudulently representing to Shae that he was the sole owner of CBED" and that Cohen had not been authorized to procure those loans.

¶8     CBED subsequently obtained a default judgment against Cohen based on his failure to participate in the case. Even with this ruling, though, the New York court initially deferred issuing

---

4. From this point forward, Kleinman and CBED largely litigated together. As a result, the parties have often referred to the positions taken by "CBED" without attempting to separate out Kleinman's interest. We will too.

any ruling on damages until CBED's claims against another defendant in the case were resolved. CBED later settled with that defendant. In August 2017, CBED filed an "Application for Final Judgment" (the Application) with the New York court, wherein CBED requested default judgment as to the damages that it had allegedly suffered from Cohen's various misdeeds.

¶9     At the outset of the Application, CBED informed the court that it was seeking "monetary and declaratory relief which is necessary to determine the rights of the parties *inter se* and concerning CBED in order to permit the company to function going forward with respect to the underlying real property." The Application addressed each of the claims at issue in the suit, including those that were unrelated to the Shae loans. In the portion of the Application that did relate to the Shae loans, CBED again alleged that in the first few months of 2015, Cohen had obtained these loans from Shae while purportedly acting on CBED's behalf, but that Cohen had not been authorized to do so. CBED then asked the court to declare that because Cohen had not been authorized to procure these loans on CBED's behalf, they were "not only fraudulent but were null and void under New York Limited Liability Law § 402(c)(2)(3) [and] (d)(2)."

¶10     Turning to the question of damages, CBED provided the court with a chart that listed the "money damages" that it claimed it had incurred as a result of Cohen's misdeeds. This chart included line-item entries for both the $650,000 loan and the $400,000 loan from Shae, as well as additional line-item entries setting forth the interest that was owed on those same loans. When coupled with the other damages that CBED was seeking from Cohen relating to the other allegations (which were also set forth in line-item entries), CBED's total damages request was $7,661,284.35. On top of that, CBED also requested punitive damages from Cohen "in the amount of $5 million." Explaining the basis for this request, CBED alleged that Cohen had "entered into fraudulent transactions" with various "members of the

public," and, in an apparent reference to Shae, CBED alleged that this included "the lenders" in Utah.

¶11   In November 2017, the New York court issued a judgment against Cohen. In this judgment, the court declared that Kleinman was now "the sole owner" of CBED and that Cohen "no longer owns any interest therein." Turning to the Shae loans, the court noted that the two loans had been for $650,000 and $400,000. It then ruled that the loans "were unlawful" because they were incurred "without a vote or consent of the majority" of CBED's members and that they were accordingly "null and void pursuant to New York Limited Liability Company Law § 402(c)(2)(3) and (d)(2)." Finally, the court granted CBED's request for a monetary judgment against Cohen "in the amount of $7,661,284.35"—an award that, again, accounted for the value of the loans.

*The Utah Action*

¶12   Cohen did not satisfy his monetary judgment to CBED, and the Shae loans soon went into default. In March 2018, Shae filed an action seeking to foreclose on its interest in Braffits Mountain.

¶13   The next month, CBED sued Shae in Utah seeking a declaratory judgment that Shae's "claimed interest in [Braffits Mountain] is invalid and unenforceable." CBED alleged that Shae's interest was unenforceable because "a New York court ha[d] adjudicated the loan transaction to be unlawful, null and void" due to Cohen's lack of authority to agree to the loans on CBED's behalf and that the judgment was "entitled to full faith and credit."

¶14   In its answer, Shae raised as an affirmative defense the assertion that the "New York Judgment purporting to nullify and void the loan transactions between Shae Financial and [CBED] is not binding upon Shae Financial." Shae also argued that CBED's claims failed based on the election of remedies doctrine.

¶15    Shae later filed a motion to dismiss that was reliant on the election of remedies doctrine. There, Shae argued that CBED's "wholly inconsistent theory" of recovery in the Utah litigation "violates the universally accepted doctrine[] of election of remedies." Shae argued that CBED "may not, in New York, affirm the existence of one set of facts entitling them to monetary relief against Cohen and later, in this court, disaffirm that set and advance a contrary set of facts entitling them to a declaration that the debt owed to Shae Financial by [CBED] is void." After CBED opposed this motion, the district court denied it, concluding that CBED had not, "based upon the New York Judgment, made an election of remedies" because the "theory advanced by [CBED] which gave rise to the New York Judgment is consistent with the theory advanced in the case before this Court."

¶16    Shae later filed a counterclaim seeking, among other things, a declaratory judgment determining the validity, amount, and priority of Shae's security interests and an order for foreclosure of the Kennedy Trust Deed. Shae also requested a monetary judgment against CBED for the value of the Shae loans plus accruing interest.

¶17    After discovery, Shae moved for summary judgment in January 2020. There, Shae again asserted that the election of remedies doctrine barred CBED's suit. In Shae's view, CBED's theory of recovery in this case was "premised on the legal assertion that Cohen does not owe [CBED] damages for the amount of Shae's loans because Shae's loans are not enforceable." Shae argued that this theory was inconsistent with the theory successfully presented to the New York court, which was that Cohen owed CBED the amount of the Shae loans. Shae invoked the collateral estoppel doctrine as well, arguing that for the New York court to have awarded damages, it had to have determined that CBED was liable to repay Shae's loans. Shae argued that CBED was thus precluded from relitigating that issue in this case.

¶18    CBED opposed the motion for summary judgment. CBED argued that because the New York judgment was "entered based upon argument and evidence that the Shae loans were fraudulent and unauthorized," there was "no basis for Shae's contention that the New York court adjudicated the loans as valid, enforceable, and binding upon CBED." With respect to the election of remedies issue, CBED thus asserted that the "theories of liability alleged in New York are consistent with the theories alleged in this case and therefore that a binding election of remedies need not be made until the New York judgment is fully satisfied." Of note for this appeal, CBED agreed that "Shae was not a party to the NY Action and the NY court did not obtain jurisdiction over Shae to adjudicate Shae's rights as between Shae and CBED." And CBED further agreed that the Application in the New York case had requested relief "inter se."

¶19    The district court issued a ruling granting Shae's motion for summary judgment. In contrast to its ruling on the previous motion to dismiss, the court now ruled that the election of remedies doctrine did bar CBED's claim. Explaining this change, the court noted that at the time of its earlier ruling, Shae had "not pointed the Court to any evidence" that Kleinman or CBED "alleged in the New York action that the Shae Financial loans were, in fact, authorized or enforceable." But the court had now considered an affidavit from Kleinman that had been filed in support of CBED's "application for a money judgment in New York," wherein Kleinman had asserted that he was entitled to "a money judgment for amounts that he 'had to pay' to Shae and others."

¶20    Turning to the doctrine itself, the court concluded that there "is obvious inconsistency between the remedy sought in NY and the remedy being sought in Utah"—namely, that "[u]nder one of CBED's theories, Cohen is liable to CBED for the amount of the Shae loans," and "under the other he is not liable to CBED." The court highlighted that "CBED has admitted that the

declaration in the New York Judgment that the Shae Financial loan is void is not binding on Shae, because Shae was not a party to the NY action." The court thus concluded that CBED's election in New York was a "purposeful 'knowledgeable election'" of remedies that became binding upon entry of the New York judgment. Because of this, the court concluded that CBED's claims were precluded and that it need not weigh in on the alternate collateral estoppel arguments raised by Shae. The court thus granted Shae's request for summary judgment and dismissed CBED's claims with prejudice.

¶21    After the court issued this ruling, CBED filed a motion under rule 54(b) of the Utah Rules of Civil Procedure asking the court to set its prior ruling aside. CBED argued that the court's ruling was incorrect because CBED's "theories of liability" in the New York and Utah cases were actually consistent, and it also argued that there had been no binding election because the New York judgment had not been satisfied. Shae opposed this motion, arguing that the court's ruling had been correct.

¶22    Before the court ruled on CBED's motion to set aside the prior summary judgment ruling, Shae filed a motion for summary judgment on its counterclaim. In this motion, Shae asked the court to establish the validity, priority, and amount of the security interests encumbering the Kennedy Note and to order the foreclosure of the Kennedy Trust Deed. Shae also calculated CBED's liability to it in the amount of $3,207,001.57—the amount of the two Shae loans plus interest—and requested that the court enter a monetary judgment against CBED in that amount. In response, CBED filed a cross-motion for summary judgment, now asserting that the New York judgment was actually binding on Shae and that the loans were void.

¶23    The district court denied CBED's rule 54(b) motion to set aside the summary judgment ruling on the election of remedies issue, concluding that it saw no legal error in its prior ruling. The

court next granted Shae's request for summary judgment on its claims against CBED, awarding it $3,207,001.57, with continuing interest until paid. And the court further ordered that the Kennedy Note and the Kennedy Trust Deed should be "sold by the Sheriff of Iron County, Utah," and that CBED would remain liable for any deficiency remaining on the judgment after the sale. And finally, the court awarded Shae its attorney fees.

¶24    CBED timely appealed these rulings (the First Appeal).

*CBED Obtains an Amendment of the New York Judgment & Then Files a Rule 60(b) Motion in the Utah Case*

¶25    In December 2021—which was while briefing was underway in the First Appeal—Kleinman, CBED, and Cohen filed a stipulated request in the New York case to amend the prior judgment and vacate the portion of the monetary award against Cohen relating to the Shae loans. The parties explained to the New York court that CBED had filed suit against Shae in Utah and that this suit was "precluded" because of that monetary judgment. The parties also informed the New York court that "the proposed Amended Judgment would not prejudice a substantial right of either [CBED or Cohen] and would not otherwise be prejudicial to either party." On February 16, 2022, the New York court granted this request and amended its judgment to vacate the earlier monetary judgment against Cohen pertaining to the Shae loans. The New York court also ordered "that the November 14, 2017 Judgment entered in this matter is amended on consent, nunc pro tunc and effective as of November 14, 2017."

¶26    The next day, CBED filed a motion in the Utah case under rule 60(b) of the Utah Rules of Civil Procedure asking the court to set aside the earlier summary judgment ruling that had been based on the election of remedies issue. In CBED's view, this was warranted because of the amendment to the New York judgment. CBED asked the Utah court to vacate its prior ruling on one of two grounds. First, it invoked rule 60(b)(5), which permits a court to

relieve a party from a judgment where "a prior judgment upon which it is based has been reversed or vacated"; second, CBED invoked rule 60(b)(6), which allows the court to grant relief from a judgment for "any other reason that justifies relief."

¶27 Shae opposed this motion, and the district court subsequently issued a written decision denying it. The court started by addressing rule 60(b) generally. It emphasized that it had "broad discretion" in considering a rule 60(b) motion, and it then concluded that "it would be inequitable and not a sound exercise of discretion to grant relief under Rule 60(b)(5) or (6), given [CBED's] delay in seeking to amend the New York judgment." In the court's view, CBED had "made a series of tactical litigation choices, beginning with its decision to pursue its remedy against Cohen in New York while deliberately excluding Shae from those proceedings," and that only "years later, when CBED does not like the result of its tactics," did CBED seek "to unwind the lengthy proceedings before both the New York and this Court and try again." The court thus expressed its view that "CBED's recent voluntary stipulation to amend its judgment against Cohen does not alter its knowledgeable election of remedies from nearly *five years prior*." (Emphasis in original.)

¶28 Addressing rule 60(b)(5) more particularly, the court concluded that the rule does not apply to "CBED's voluntary, stipulated amendment to the New York judgment" because there "is a fundamental difference between having a hard-won legal victory taken away through reversal or vacatur, and voluntarily parting with that victory through a stipulated amendment, hoping to gain advantage over a different party in a different lawsuit (Shae)." The court thus "decline[d] to exercise its considerable discretion to grant CBED relief where the New York judgment has not been vacated or reversed but has instead been strategically modified to avoid the consequences of both the New York litigation and the instant case."

¶29    Turning to rule 60(b)(6), the court pointed out that CBED had "advance[d] no separate set of facts or arguments uniquely addressed to this Court's discretion under Rule 60(b)(6)." In the court's view, because "CBED ask[ed] this Court to consider factual 'grounds' for relief under Rule 60(b)(5)—even if its request is unavailing—relief is unavailable under subsection (6) where no factually distinctive grounds are offered or argued."

¶30    CBED timely appealed the court's rule 60(b) decision (the Second Appeal).

*Consolidation of the Two Appeals*

¶31    In July 2022, CBED filed a motion asking this court to consolidate the two appeals. Shae opposed the request, pointing out that briefing had already been completed on the First Appeal, while briefing had not yet begun on the Second Appeal. This court denied the motion for consolidation.

¶32    This court held oral argument in the First Appeal in January 2023. At that time, the reply brief in the Second Appeal had just been filed. After oral argument, this court reconsidered its earlier decision and issued an order on its own motion that consolidated the two appeals. This order also invited each party to submit a supplemental memorandum "addressing the effect, if any, that consolidation will have on the issues raised in the respective appeals."

¶33    Both parties submitted supplemental memoranda. In its memorandum, CBED argued that the "factual backgrounds and legal issues" in the First Appeal and the Second Appeal "overlap, virtually in total—the only evidentiary difference is one document: the amended New York Judgment which is retroactive as of the date of the original." CBED also argued that the "Full Faith and Credit Clause of the United States Constitution requires this Court to accept the New York judgment, as amended" because it "would be unconstitutional to uphold the summary

judgment where it is based upon a legal document—a court judgment—that by definition and undisputedly is no more." In its memorandum, Shae argued that while "the underlying facts of both cases are similar, the issues are completely distinct" because the First Appeal "deals with the district court's application of the election of remedies doctrine" and the Second Appeal "deals with the district court's application of rule 60(b) of the Utah Rules of Civil Procedure." Shae asserted that the issues in the Second Appeal "have no bearing on the correctness of the decision in [the First Appeal], and the court must consider the [summary] judgment without reference to later-occurring events."

¶34 This court subsequently held oral argument on the consolidated appeals.

ISSUES AND STANDARDS OF REVIEW

¶35 The first issue on appeal is whether the district court erred in granting summary judgment in favor of Shae based on its conclusion that the election of remedies doctrine applied. "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (quotation simplified). And the "availability of a remedy is a legal conclusion that we review for correctness." *KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 29, 436 P.3d 151 (quotation simplified).

¶36 The second issue on appeal is whether the district court abused its discretion in denying CBED's rule 60(b) motion. Appellate courts "review a district court's denial of a 60(b) motion under an abuse of discretion standard of review." *Menzies v. Galetka*, 2006 UT 81, ¶ 54, 150 P.3d 480. "In addition, we note that our review of a district court's rule 60(b) order is limited in scope because such an appeal must only address the propriety of the

denial or grant of relief, not the correctness of the underlying judgment." *Bodell Constr. Co. v. Robbins*, 2014 UT App 203, ¶ 5, 334 P.3d 1004 (quotation simplified).[5]

## ANALYSIS

### I. Election of Remedies

¶37 CBED obtained a judgment in New York in November 2017 under which Cohen was obligated to pay over a million dollars to CBED based on the Shae loans. Because of this judgment, the Utah district court held that under the election of remedies doctrine, CBED could not subsequently obtain a judgment declaring the Shae loans null and void. In the First Appeal, CBED argues that this ruling was incorrect. We disagree.

¶38 "In its most basic terms, the election of remedies doctrine prevents double redress for a single wrong." *Helf v. Chevron U.S.A. Inc.*, 2015 UT 81, ¶ 68, 361 P.3d 63 (quotation simplified). As articulated by our supreme court, this doctrine has two branches: first, a plaintiff may not obtain "a double recovery"; and second, a plaintiff also "may not obtain . . . legally or factually inconsistent recoveries for the same wrong." *Id.* ¶ 70. In its brief, CBED suggests that this case should be analyzed under the double recovery branch, and in CBED's view, the double recovery branch doesn't bar its claims. But we agree with the district court that this

---

5. Both below and on appeal, Shae has argued that CBED's claims are also barred by collateral estoppel. In its summary judgment ruling, the district court determined that it was unnecessary to address the collateral estoppel argument because the election of remedies doctrine precluded CBED's claims against Shae. Because we affirm the district court's ruling based on the election of remedies doctrine, we likewise need not address Shae's collateral estoppel argument.

case was appropriately analyzed under the inconsistent theories branch and that this branch bars CBED's claims.

¶39   "Utah's modern pleading rules permit litigants to plead inconsistent theories of recovery in the alternative." *Id.* ¶ 74; *see also* Utah R. Civ. P. 8(e) ("A party may state a claim or defense alternately or hypothetically . . . ."). Under the inconsistent theories branch of the election of remedies doctrine, the plaintiff's election becomes binding once "one remedy is pursued to a determinative conclusion." *Helf*, 2015 UT 81, ¶ 77 (quotation simplified). And a determinative conclusion occurs "once the fact-finder and the judge have resolved all factual and legal disputes related to the inconsistent theories of liability," at which point "the plaintiff is then entitled to the one remedy (if any) that is supported by the final determination of the law and the facts." *Id.* ¶ 76 (quotation simplified); *see also H&P Invs. v. iLux Cap. Mgmt. LLC*, 2021 UT App 113, ¶¶ 44–47, 500 P.3d 906 (applying the inconsistent recovery branch).

¶40   As discussed, CBED sought and obtained a monetary judgment against Cohen in the New York case that was based on the value of the Shae loans. And on this, CBED was very clear. In the Application, CBED provided the New York court with a chart that listed its various damages, and that chart included specific line items for the value of the Shae loans and for the interest that would be owed on them. In the ensuing judgment, the court then granted that request. Once this occurred, this theory had now been "pursued to a determinative conclusion" and the New York court had now "resolved all factual and legal disputes" relating to it. *Helf*, 2015 UT 81, ¶¶ 76–77 (quotation simplified). Because of this determinative conclusion, it would have been inconsistent for the Utah court to have later held that those loans weren't actually valid. Simply put, either CBED owed this amount to Shae or it didn't. And the New York judgment was predicated on CBED owing this amount. Because of this, CBED was indeed now

seeking "legally . . . inconsistent theories of recovery for a single wrong" by arguing otherwise in the Utah case. *Id.* ¶ 69.

¶41   CBED pushes back on two fronts. But we find neither of its arguments to be availing.

¶42   First, CBED points out that, in addition to the monetary judgment against Cohen, the New York court also issued a declaratory judgment that the Shae loans were "null and void." While CBED places much weight on this aspect of the New York ruling, the problem with its argument is that CBED never asked for this declaratory relief in a manner that would have been binding on Shae. After all, CBED didn't sue Shae in the New York action, even though Shae was, to put it mildly, a decidedly interested party with respect to the validity of its own loans to Cohen (and, purportedly, CBED). Moreover, in the Application in the New York case, CBED affirmatively informed the court that it was seeking "monetary and declaratory relief which is necessary to determine the rights of the parties inter se." The term "inter se" is understood to mean, "(Of a right or duty) owed between the parties rather than to others." *Inter se*, Black's Law Dictionary (11th ed. 2019). Again, CBED had not sued Shae as part of the New York suit, so Shae was not a "party" to this action. Thus, in its own request for relief, CBED was telling the New York court that it was not seeking a ruling that would be binding on Shae.

¶43   Indeed, although CBED argued early in the Utah litigation that the New York judgment was somehow binding on Shae under the Full Faith and Credit Clause, CBED later admitted in its opposition to Shae's motion for summary judgment that "Shae was not a party to the NY Action and the NY court did not obtain jurisdiction over Shae to adjudicate Shae's rights as between Shae and CBED." And CBED has recently admitted this again in federal court. There, CBED has recently sued Shae in Utah federal court based on events involved in the sale of Braffits Mountain at the aforementioned sheriff's sale. In its complaint in that case, CBED

recounted the procedural history of the events at issue in this appeal. As noted by the federal district court in a ruling, CBED affirmatively alleged in its own complaint that because Shae was not a party to the New York action, Shae "was not bound by the New York court's ruling that the loans were null and void." *Cohen Braffits Estates Dev., LLC v. Shae Fin. Group*, No. 4:23-cv-00031, 2023 WL 8574898, at *2 (D. Utah Dec. 11, 2023) (citing CBED's federal complaint).

¶44   The parties have spent some energy in this case arguing about why CBED chose to file suit in New York without involving Shae. Shae suggests that this was intentional—that what CBED was really after in the New York case was a declaration that Kleinman (and not Cohen) controlled CBED. From this, Shae surmises that perhaps CBED initially thought that it could recover from Cohen, but that CBED worried that if it added Shae to the mix, Shae might be able to argue that CBED was liable for these loans under some sort of agency theory, thus complicating the litigation.[6]

¶45   We need not ultimately figure out why CBED proceeded as it did. What matters is that it did. Again, CBED sought and obtained a final monetary judgment against Cohen in the New York case that was predicated on CBED's ongoing liability to Shae for these loans. If CBED didn't owe that money to Shae, there would have been no basis for obtaining that monetary judgment.

---

6. Along these lines, Shae points us to New York Limited Liability Company Law section 412(d), which states that "[n]o act of a member, manager or other agent of a limited liability company in contravention of a restriction on authority shall bind the limited liability company to persons having knowledge of the restriction." At various points in this litigation, there have been allegations that Cohen affirmatively represented to Shae that he did have authority to act for CBED, which might have allowed Shae to plausibly argue that these acts were valid.

As a result, when CBED later filed an action in Utah asking a Utah court to declare that the Shae loans were invalid as to Shae, CBED was asking for a declaration that would have been inconsistent with the New York judgment as it then existed.

¶46   This leads to CBED's second responsive argument, which starts with the suggestion that it couldn't have sued Shae in New York because the New York courts lacked personal jurisdiction over Shae. CBED then relies on language from *Help* in which our supreme court opined that if the "strict application of the election of remedies doctrine" would present a litigant with a "cruel dilemma" in which the litigant is forced to "choose at peril" one potential remedy over the other, a court may decline to enforce the election of remedies doctrine. *Help*, 2015 UT 81, ¶¶ 80, 82.

¶47   But this wasn't the type of "cruel dilemma" that *Help* was concerned about. *Help* involved a litigant who had been injured at work and was now seeking both workers' compensation benefits and damages against the employer through intentional tort claims. *Id.* ¶ 80. As the supreme court explained, this scenario presented the worker with two particular problems. First, the worker could "not pursue these two remedies in a single forum." *Id.* ¶ 79. And second, although an award in the intentional tort case might be greater than the recovery in a workers' compensation case, if the worker obtained an award of workers' compensation benefits before the intentional tort case was resolved, this would foreclose any future award of damages in the tort case. *Id.* ¶¶ 80–81. This is so because a workers' compensation claim requires a determination that there has been an "accident," while an intentional tort requires proof that something intentional occurred. *Id.* ¶¶ 78–79, 86. Because many injured workers might need financial assistance quickly, the supreme court was worried that the strict application of the election of remedies doctrine in such a circumstance might require the worker to make a "gambler's choice," wherein the worker would have to decide whether to pursue workers' compensation benefits "before

knowing how a jury will resolve an intentional tort claim." *Id.* ¶¶ 84–85 (quotation simplified). But the supreme court recognized that the election of remedies doctrine is a "rule of procedure or judicial administration," and it then held that because this presents an "equitable judicial principle," courts should fashion remedies in such a circumstance to avoid presenting such an injured worker with this kind of unfair choice. *Id.* ¶ 85 (quotation simplified).

¶48 It's unclear whether the supreme court meant to extend this same construct outside the injured worker scenario. But regardless, under our own assessment of the "equitable judicial principles" behind the election of remedies doctrine, we don't believe that CBED was presented with a similarly cruel dilemma.

¶49 As an initial matter, CBED's argument is premised on its assertion that it couldn't have sued Shae in New York. We have some doubt whether this is so. After all, Shae had made two large loans to Cohen that were purportedly on behalf of CBED, and at the time, Cohen was a New York resident and CBED was a New York corporation. This may well have sufficed to establish minimum contacts. In any event, the dilemma that was contemplated by *Help* involved two remedies of differing values in which receipt of the lesser remedy might come quicker, thereby foreclosing the litigant's ability to ever receive the greater remedy. This is why the supreme court was concerned about presenting such a litigant with a "gambler's dilemma."

¶50 But here, CBED was seeking just a single thing: it wanted to not be financially responsible for the Shae loans. In the New York case, CBED availed itself of one potential option for obtaining that result: it successfully sued Cohen and obtained a monetary judgment against him based on the value of those loans. If CBED thought it could also achieve that outcome by invalidating the loans as to Shae, it could have sought such a ruling at the same time too. CBED could have sued Shae in New

York as part of the suit that was already pending against Cohen and in which it had already asserted claims based on these very loans. And if Shae had argued that the New York court lacked jurisdiction, that jurisdictional question could have been litigated then and there. Or, alternatively, CBED could have contemporaneously sued Shae in Utah—after all, it had no problem suing Shae in Utah years later, and it has given us no reason why it couldn't have done so earlier. And after doing so, it could have asked the New York court to stay imposition of any judgment on the monetary judgment damages award against Cohen while that suit was pending.

¶51 Our point is this: if CBED thought it could invalidate those loans as to Shae, CBED could have timely asked a court for this very relief. But CBED didn't do anything to seek such relief. Instead, it took the case against Cohen in New York to final judgment without asking any court to rule that the loans were invalid as to Shae. It was only years later, after Shae sought to assert its own rights under those loans, that CBED first raised this claim.

¶52 Again, the question at issue in the First Appeal is whether the district court correctly granted summary judgment on the election of remedies issue based on the record that was before it at that time. (The court's subsequent ruling on the altered record that was at issue in the rule 60(b) motion will be addressed in Part II.) On the state of that record, we agree with the district court that there was an "obvious inconsistency" between the "remedy being sought in Utah" and the final monetary judgment that had already been obtained in New York. Because the New York judgment had ordered Cohen to pay monetary damages to CBED based on CBED's financial obligations to Shae, the election of remedies doctrine prevented CBED from obtaining a ruling in Utah holding that CBED did not actually owe anything to Shae at all. We thus affirm the district court's decision granting summary judgment to Shae.

## II. Rule 60(b)

¶53   As noted, after the Utah district court granted Shae's motion for summary judgment on the election of remedies issue, CBED filed a stipulated request in the New York case asking the court to remove the damage award against Cohen from the earlier judgment. The New York court granted that request. Once this occurred, CBED filed a motion asking the Utah court to undo its election of remedies ruling under either rule 60(b)(5) or rule 60(b)(6) of the Utah Rules of Civil Procedure. The Utah court declined to do so. CBED now argues that this was an abuse of discretion. We disagree.

¶54   Rule 60(b) states that "[o]n motion and upon just terms, the court *may* relieve a party or its legal representative from a judgment, order, or proceeding" for any of the reasons set forth in the ensuing subparts. Utah R. Civ. P. 60(b) (emphasis added). In other contexts, we've recognized that the "use of the word 'may,' . . . indicates a court's discretionary power." *North Fork Meadows Owners Ass'n, Inc. v. Dove*, 2023 UT App 107, ¶ 15, 537 P.3d 258 (quotation simplified); *see also Mota v. Mota*, 2016 UT App 201, ¶ 6, 382 P.3d 1080. And the same is true here too. Indeed, our supreme court has held that district courts have "broad discretion" when ruling on rule 60(b) motions because such "motions are equitable in nature, saturated with facts, and call upon judges to apply fundamental principles of fairness that do not easily lend themselves to appellate review." *Brady v. Park*, 2019 UT 16, ¶ 106, 445 P.3d 395 (quotation simplified).[7]

---

7. A district court's "broad discretion" to deny a 60(b) motion is not unfettered. "If a district court's ruling on a 60(b) motion is based on clearly erroneous factual findings or flawed legal conclusions, the district court has likely abused its discretion." *Menzies v. Galetka*, 2006 UT 81, ¶ 55, 150 P.3d 480; *see also Harrison*

(continued…)

¶55 Again, CBED requested relief under both rule 60(b)(5) and rule 60(b)(6), but the district court rejected both requests. We see no abuse of discretion with respect to either ruling.

¶56 First, rule 60(b)(5) provides that a "court may relieve a party . . . from a judgment" if "a prior judgment upon which it is based has been reversed or vacated, or it is no longer equitable that the judgment should have prospective application." Utah R. Civ. P. 60(b)(5). And we have held that this "power of equity is only to be applied . . . when highly significant changes alter the landscape of a judgment—for instance, subsequent legislation, a change in the decisional law, or a change in the operative facts." *Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228, ¶ 41, 391 P.3d 222 (quotation simplified).

¶57 The district court concluded that rule 60(b)(5) doesn't apply to this case. The court noted that this rule operates when the prior judgment has been "reversed or vacated," whereas this

*v. Thurston*, 2011 UT App 231, ¶ 12, 258 P.3d 665 (noting that "although the district court has broad discretion in ruling on a rule 60(b) motion," the ruling in question was infirm because the court had "ignore[d] undisputed affidavit evidence and actions" the plaintiff had taken and had "fail[ed] to consider the fact that the ultimate root of her problem . . . were factors beyond her control"). CBED suggests that the "district court made clearly erroneous factual findings" by describing CBED's efforts to amend the New York judgment as a "collateral attack" and a "collusive amendment by stipulation." But these were law-based descriptions of the record, not factual conclusions. In any event, even if the court's reference to the "collusive" nature of the stipulation had some factual component, we would still conclude that there was no abuse of discretion with respect to the court's denial of the rule 60(b) motion. And this is so because, as explained below, the court ultimately focused its ruling on the broader timing implications of CBED's actions.

case involved a "stipulated amendment." The parties on appeal disagree about whether the court was correct in drawing this distinction. But we need not decide whether this was so because, aside from questioning whether rule 60(b)(5)'s predicate had been satisfied, the court more broadly denied the rule 60(b) motion as a whole based on its concerns about the timing of CBED's various filings. And on this, we see no abuse of the court's discretion.

¶58    The court opined that CBED had made "a series of tactical litigation choices, beginning with its decision to pursue its remedy against Cohen in New York while deliberately excluding Shae from those proceedings." The court had good reason for this assessment. As discussed, CBED filed the amended complaint in New York in August 2016 in which it asserted claims against Cohen based on the Shae loans. But CBED did not also file suit at that time against Shae, either in the New York case or contemporaneously here in Utah. Instead, CBED took its case against Cohen to final judgment without ever seeking to invalidate Shae's rights to the money—and CBED did so even though, as it subsequently acknowledged in both the Utah case and again in federal court, the New York court's ruling about the supposed invalidity of those loans could not have been binding on Shae because Shae was a not a party to that suit.

¶59    It was only in April 2018 when CBED first sought to invalidate those loans as to Shae through the Utah action. But this was after Cohen had defaulted on his obligations to CBED, and this was also after Shae had filed an action in Utah seeking to foreclose on the Braffits Mountain property. Moreover, in this Utah suit, CBED then spent several years litigating as if the New York judgment was valid on its original terms. It was only in December 2021 that CBED went to New York and asked the court to remove the prior monetary damage award against Cohen. But by this point, the Utah case had been fully litigated against the backdrop of the original New York judgment, and that Utah case was already up on appeal.

¶60    Thus, when CBED finally asked the New York court to not order monetary damages against Cohen related to the Shae loans, this was five years after CBED had filed an amended complaint in New York asking for such damages, four years after the New York judgment had awarded those damages, three years after Shae had initiated foreclosure proceedings in Utah, three years after CBED first sued Shae in Utah, and a year and a half after the Utah district court had issued a summary judgment ruling that was predicated on that earlier monetary judgment. If CBED had intended to relinquish its right to monetary damages against Cohen stemming from these loans, it could have done so at any of these earlier points. Instead, CBED let both the New York case and the Utah case proceed to final judgment, and it was only after it lost in the Utah case that CBED finally sought to alter the monetary judgment component from the New York case.

¶61    A district court has broad discretion to consider any request under rule 60(b). Under these circumstances, we see no basis for concluding that the district court abused its discretion in declining to undo the results of the already-concluded Utah litigation based on CBED's belated decision to not request monetary damages against Cohen for the value of the Shae loans.

¶62    Second, CBED also requested relief under rule 60(b)(6). That rule applies when "any other reason . . . justifies relief." Utah R. Civ. P. 60(b)(6). This is sometimes referred to as "the rule's residuary clause," and we've held that the "power given to courts by rule 60(b)(6) should be cautiously and sparingly invoked" and "should be used only in unusual and exceptional instances." *Fritsche v. Deer Valley Ridge at Silver Lake Ass'n of Unit Owners*, 2022 UT App 11, ¶¶ 46–47, 504 P.3d 761 (quotation simplified).

¶63    The district court rejected CBED's rule 60(b)(6) argument, in part, because of its conclusion that "CBED advance[d] no separate set of facts or arguments uniquely addressed to this Court's discretion under Rule 60(b)(6)." We see no basis for

overturning this conclusion. As recognized by our supreme court, if a party argues that "rule 60(b)(6) should apply in the event its other arguments do not succeed," but the party doesn't "express any additional reasons in support of" its rule 60(b)(6) argument, that argument fails "for the same reasons" that the arguments under the other subsections failed. *Brady v. Park*, 2019 UT 16, ¶ 110, 445 P.3d 395.

¶64 This is the case here. As it did with its rule 60(b)(5) argument, CBED focuses on the fact that the New York judgment was amended in early 2022. But as discussed, this amendment occurred well after the New York court and the Utah court had already issued rulings on the basis of CBED's prior request for monetary damages against Cohen. Thus, whether couched in terms of rule 60(b)(5) or rule 60(b)(6), the result is the same: we see no basis for overturning the court's exercise of its broad discretion in this matter.[8]

---

8. In CBED's supplemental memorandum addressing the effects of our decision to consolidate the two appeals, CBED argued that the Full Faith and Credit Clause of the United States Constitution "requires this Court to honor the amended New York judgment" by "overturning a summary judgment order that is based on a judgment that, by operation of law, no longer exists and never did exist (a classic legal fiction)." But CBED never preserved this argument.

To be clear, in the early stages of this litigation, CBED did invoke the Full Faith and Credit Clause in an attempt to bind Shae to the *original* New York judgment. But years later, the Utah district court granted summary judgment in Shae's favor based on the election of remedies doctrine, after which CBED secured an amended judgment in New York in an attempt to undo that ruling. After those rulings were issued, CBED never argued to the Utah court that the Full Faith and Credit Clause now required it

(continued…)

CONCLUSION

¶65   The district court did not err when it concluded that the election of remedies doctrine prevented CBED from seeking a declaration in Utah that the Shae loans were null and void as to Shae. As a result, the district court correctly granted summary judgment in Shae's favor. The district court also did not abuse its discretion in denying CBED's requests for relief under rule 60(b).

¶66   Affirmed.[9]

———————

to accept the amended New York judgment and thus undo its summary judgment ruling as a result. "When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443. Here, the first time CBED made this argument was in its response to our decision to consolidate the two appeals. For preservation purposes, this was too late. We therefore do not reach the argument.

9. As noted, the district court granted Shae's request for attorney fees, and it did so based on the contractual language in the promissory notes underlying the Shae loans. A "provision for payment of attorney's fees in a contract includes attorney's fees incurred by the prevailing party on appeal." *Management Servs. Corp. v. Development Assocs.*, 617 P.2d 406, 409 (Utah 1980); *see also Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228, ¶ 74, 391 P.3d 222 ("When under a contractual fee provision a party is entitled to attorney fees below and prevails on appeal, that party is also entitled to fees reasonably incurred on appeal."). In light of this, Shae has requested its attorney fees incurred in this appeal. We grant that request and remand to the district court for a determination of those fees.